IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,           )
ex rel. MARC A. LANDSBERG, M.D.,    )
and SHARON L. BURKE,                )
                                    )
            Plaintiffs,             )
                                    )
        v.                          )       Civil Action No. 03-1429
                                    )
PETER G. LEVINSON, M.D.,            )
LAKE ERIE WOMEN'S CENTER, P.C.,     )
PATRICK WILLIAM DIESFELD,M.D.,P.C.,)
3 DIMENSIONAL IMAGING, INC.,        )
SERHAT ERZURUM, M.D.,               )
GEORGE H. DENEHY, and DOES I        )
through XX, inclusive,              )
                                    )
            Defendants.             )


REPORT AND RECOMMENDATION

I.   RECOMMENDATION

        It is respectfully submitted that the Motion to Dismiss
Complaint (doc. 23), filed on behalf of defendants, Patrick
William Diesfeld, M.D., P.C. ("PWDPC"), and Patrick William
Diesfeld, M.D. ("Dr. Diesfeld"), be denied.

II.  REPORT

        Marc A. Landsberg, M.D., and Sharon L. Burke,
hereinafter collectively referred to as the "Relators," commenced
this *qui tam* action pursuant to the federal False Claims Act
("FCA"), 31 U.S.C. §§ 3729-3732, as amended.[1]  The Relators

_____

[1]     According to the complaint, Serhat Erzurum, M.D.
        ("Erzurum"), hired Dr. Landsberg in October of 2001, to work
        as a physician in the specialty of obstetrics/gynecology at

allege that the defendants perpetrated a scheme to defraud the
United States of America, billing Medicare and Medicaid for
unnecessary medical tests and procedures.[2]   Specifically, the
Complaint charges that defendant Serhat Erzurum, M.D.
("Erzurum"), conspired with others and devised the scheme to
defraud the government.[3]   The Relators claim that Dr. Diesfeld
and PWDPC entered into agreements with Erzurum's company, 3
Dimensional Imaging, Inc. ("3DI"), to implement fraudulent
billing protocols and to pay 3DI commissions of 25% to 40% of the
increased revenues generated.[4]   Further, it is alleged that Dr.
Diesfeld, applying the techniques and lessons learned from
Erzurum and others, (1) instructed Dr. Diesfeld's ultrasound
technicians to perform ultrasound tests, frequently without
regard to medical necessity, in order to maximize revenues;[5] (2)
designated obstetric patients as "high risk" when they were not,
for purposes of justifying tests that were not necessary;[6] (3)

---

Erzurum's medical office in New Castle, PA.  Complaint, ¶
15.  Dr. Landsberg's employment with Erzurum and his
professional corporations lasted through July 28, 2003. Id.
Erzurum hired Ms. Burke in April of 2001 and most recently
she performed billing services for Erzurum's various
business enterprises.  Complaint, ¶ 14.

[2]     Complaint, p.1.

[3]     Complaint, ¶ 36.

[4]     Complaint, ¶¶ 37, 38 & 50.

[5]     Complaint, ¶ 44.

[6]     Complaint, ¶ 45.

instructed his employees and billing company to bill multiple codes for each ultrasound test performed on obstetric patients, thus billing the government several times for a single test;[7] (4) instructed his employees to schedule patients for multiple repeat tests far in excess of what could be medically necessary or justified;[8] (5) instructed his employees to mis-code ultrasound tests under a code for CAT scan tests;[9] and (6) submitted thousands of false claims from January 2002 through at least September 25, 2003, the date the Plaintiffs filed their *qui tam* complaint.[10]

Dr. Diesfeld and PWDPC (collectively, the "Defendants") have now moved to dismiss the complaint pursuant to Rules 4(e), 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure, arguing that (1) this court lacks personal jurisdiction over them and (2) Plaintiffs failed to effect proper service of process. The Plaintiffs have responded to the motion, as has the United States of America, which filed a Statement of Interest.  The motion is ripe for review.

---

[7]      Complaint, ¶ 46.

[8]      Complaint, ¶ 47.

[9]      Complaint, ¶ 48.

[10]      Complaint, ¶ 49.

*Personal Jurisdiction*

The Defendants argue that they do not have sufficient contacts with the forum so that the exercise of personal jurisdiction comports with due process of law.

The following facts are gleaned from the Declaration of Dr. Diesfeld (doc. 24-2), submitted in support of Defendants' argument.  Dr. Diesfeld is licensed to practice medicine in California and has his practices exclusively in Ventura and Santa Paula, California.  Neither he nor his corporation has conducted any business in Pennsylvania.  To the extent that he or his corporate practice has had any substantive dealings with any of the other parties in this litigation, Dr. Diesfeld avers that such dealings took place exclusively in California.  Beyond the initial telephone call to Dr. Erzurum in response to an advertisement in a medical periodical, the only contact the Defendants have had with Pennsylvania was the act of mailing checks to Dr. Erzurum in Pennsylvania in satisfaction of the services that he and his company were providing in California. Based on these facts, the Defendants argue that this court is precluded from asserting jurisdiction over them since they have no "contacts, ties, or relations" with the forum state, Pennsylvania.  International Shoe Co. v. State of Washington, 326 U.S. 310, 319 (1945).

4

In a federal question case such as this one, the court must determine (1) whether a rule or statute confers jurisdiction over the Defendants and (2) whether the exercise of jurisdiction would offend principles of Fifth Amendment due process. Go-Video, Inc. v. Akai Elec. Co., Ltd., 885 F.2d 1406, 1413 (9th Cir. 1989).  A federal statute providing for nationwide service of process serves as a statutory basis for personal jurisdiction. See Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 942 (11th Cir. 1997).

Section 3730 of Title 31, United States Code, provides that private persons may bring civil actions in the name of the government against those who violate Section 3729 of the FCA. The pertinent jurisdictional provision of the FCA provides as follows:

### False Claims Act Jurisdiction

(a) Actions under section 3730. -- Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred.  A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States.

31 U.S.C. § 3732(a).  It seems clear that the FCA provides for nationwide service of process in qui tam actions by providing that a summons shall issue and be "served at any place within or outside the United States."   Id.   See United States v. St.

5

Joseph's Regional Health Center, 240 F. Supp.2d 882, 886 n. 1
(W.D. Ark. 2002) (recognizing that §3732(a) of the FCA provides
for nationwide service of process); United States ex rel. Finks
v. Huda, 205 F.R.D. 225, 227 (S.D. Ill. 2001) (same); United
States ex rel. Vallejo v. Investronica, Inc., 2 F. Supp.2d 330,
334 (W.D.N.Y. 1998) (same); United States v. Metzinger, 1996 WL
412811, at *2 n.3 (E.D. Pa. 1996) (same).  Accordingly, the first
part of the test for personal jurisdiction has been met in this
case.

  Turning now to the second part of the test, the
exercise of personal jurisdiction is said to comport with due
process where a non-resident defendant has at least minimum
contacts with the forum so as not to offend "traditional notions
of fair play and substantial justice."  International Shoe Co.,
326 U.S. at 316.  The parties acknowledge that neither the
Supreme Court nor the Court of Appeals for the Third Circuit has
addressed the issue of the relevant forum -- i.e., the United
States as a whole or the state in which the district court sits -
- on which to base a minimum contacts analysis under the FCA.  As
the Plaintiffs and the United States have noted, however, courts
that have addressed this issue have consistently found that in
FCA cases only minimum contacts with the United States as a whole
are required.  United States ex rel. Finks v. Huda, 205 F.R.D. at
228 (finding defendant's contacts with the United States

establish personal jurisdiction over FCA claim); United States ex rel. Vallejo v. Investronica, Inc., 2 F. Supp.2d at 334 (same); United States v. Metzinger, 1996 WL 412811, at *2-3 (same); United States v. St. Joseph's Regional Health Center, 240 F. Supp.2d at 886 n. 1 (same).  These courts have reasoned that since due process limitations are limitations on the power of the sovereign and not the convenience of defendants, no such limitations come into play where a federal statute authorizes nationwide service of process since all citizens within the territory of the sovereign are subject to the sovereign's power, "whether the court sits in Indianapolis or Alexandria."   Finks, 205 F.R.D. at 227.  We find this reasoning to be persuasive.

As well, in the context of other federal statutes, the Third Circuit has concluded that a "national contacts" analysis is appropriate.  For example, in Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 369 (3d Cir. 2002), the 1934 Securities Act, 15 U.S.C. § 78aa, provided for nationwide service of process.  The Third Circuit held that "a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process." 292 F.3d at 369 (citations omitted).  The Circuit went on to explain the reason for such an analysis: that it is neither unfair nor unreasonable under the Fifth Amendment in such cases since the fairness that due process

requires relates to the fairness of the exercise of power by a sovereign over an individual based on residence or contacts within the territory of the sovereign and when a federal court exercises jurisdiction pursuant to a nationwide service of process provision in a federal question case, it is exercising jurisdiction for the territory of the United States.  Id.; see also In re Federal Fountain, Inc. v. KR Entertainment, Inc., 165 F.3d 600, 602 (8th Cir. 1999); Med. Mut. of Ohio v. deSoto, 245 F.3d 561, 567-68 (6th Cir. 2001).  Because the Defendants in this case reside and do business within the territory of the United States, it would appear that the minimum contacts necessary for the exercise of nationwide personal jurisdiction are present in this case.

The Defendants attempt to distinguish the Finks case on two bases.  First, the Defendants note that the government intervened in Finks but declined to do so here.  They suggest that the nationwide service of process clause should somehow be limited to qui tam cases in which the government intervenes.  This argument, however, runs counter to the express language of Section 3732(a), which applies to "[a]ny action under § 3730," which explicitly includes actions by qui tam relators, even where the government declines to intervene.[11]

---

[11]    As the United States correctly notes, the cases cited by Defendants do not support their argument here; indeed neither case addressed the issue of personal jurisdiction. Hughes Aircraft Co. v. United States ex rel. Schumer, 520

Moreover, the fact that the government has declined to intervene in any given *qui tam* action does not diminish the federal interest in combating fraud against the government.  The government remains the real party in interest, <u>United States ex rel. Zissler v. Regents of University of Minnesota</u>, 154 F.3d 870, 872 (8th Cir. 1988), and, is entitled to, *inter alia*, the majority of any proceeds the relator may recover.  31 U.S.C. § 3730(d).

Secondly, Defendants suggest that because they live at a far greater distance from the district court than did the defendants in <u>Finks</u>, Dr. Diesfeld and PWDPC would be unfairly and unreasonably inconvenienced by having to defendant against the claims here from such a long distance.  The question of inconvenience associated with a particular venue is generally addressed by the principle of *forum non conveniens* as codified at 28 U.S.C. § 1404 which does not raise jurisdictional issues.  <u>See, e.g.</u>, <u>In re Federal Fountain, Inc.</u>, 165 F.3d at 602.

Further, it appears that where it has been established that a defendant has minimum contacts with the United States,

---

U.S. 939, 949 (1997) simply acknowledged the motivation for relators to pursue FCA claims, i.e., allowing the relators to share in any recovery that might eventually be obtained, which, as the United States suggests, serves the federal interest in effective enforcement of the FCA by encouraging whistleblowing.  As well, <u>United States ex rel. Foulds v. Texas Tech University</u>, 171 F.3d 279, 290 (5th Cir. 1999) merely recognized that at times relators act contrary to the best interests of the government.

most courts do not employ a separate fairness analysis to establish personal jurisdiction.  See, e.g., In re Federal Fountain, Inc., 165 F.3d at 602; Med. Mut. of Ohio v. deSoto, 245 F.3d at 567-68 (finding "when a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States"); Fitzsimmons v. Barton, 589 F.2d 330, 333 (7th Cir. 1979)(finding the fairness standard imposed by the Fifth Amendment "relates to the fairness of the exercise of the power by a particular sovereign, not the fairness of imposing burdens of litigating in a particular forum").

The Third Circuit has recognized that there is some debate whether a separate "fairness" analysis ought to apply in the context of a federal statute authorizing nationwide service of process.  Pinker, 292 F.3d at 370 n.2.  Although the Third Circuit has not decided this issue, it has "hinted that a fairness analysis consisting of more than an assessment of the defendant's national contacts would be appropriate."  Id. (citations omitted).

In our view, even if a separate fairness analysis is undertaken in this case, the district court should deny

Defendants' motion.  Those courts that have adopted a separate
fairness analysis hold that a defendant must make "a compelling
case" of unfairness before a court will weigh the inconvenience
to a defendant against the federal interest involved.  See, e.g.,
Republic of Panama, 119 F.3d at 946-48 (finding it is only in
"highly unusual cases that inconvenience will rise to the level
of a constitutional concern" and "modern means of communication
and transportation have lessened the burden of defending a
lawsuit in a distant forum").  As the United States points out,
in the context of the FCA, courts have found the exercise of
personal jurisdiction proper even where defendants had no
contacts with and resided far from the district where the court
sat.  See United States v. St. Joseph Reg'l Health Ctr., 240
F.Supp. at 884 and 886 n.1 (finding that Eastern District of
Pennsylvania had personal jurisdiction over Arkansas company
lacking any contacts with Pennsylvania).

        In the instant case, Defendants' "case" of unfairness
is distance and, thus, inconvenience of litigating, between
California and Pennsylvania.  Given the "modern means of
communication and transportation" between California and
Pennsylvania, we find that the physical distance between the two
states is not so compelling.  Moreover, Defendants have presented
no evidence or argument that the exercise of jurisdiction in the
chosen forum will significantly compromise their ability to

defend the lawsuit, raising inconvenience to a level of constitutional concern.  Republic of Panama, 119 F.3d at 947-48. Accordingly, Defendants have not demonstrated constitutionally significant inconvenience and the court need not balance the burdens imposed on the Defendants with the federal interest involved in the litigation.  Id.

Nevertheless, even if the court were to assume that the Defendants had established a compelling case, in our view the federal interest here outweighs any burden that may be experienced by the Defendants.  "The purpose of the False Claims Act, of course, is to discourage fraud against the government, and the whistleblower provision is intended to encourage those with knowledge of fraud to come forward."  Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 951 (5th Cir. 1994), cert. denied 513 U.S. 1154 (1995).  Congress has seen fit to provide for nationwide service of process, which would seem to signal an interest in effective enforcement of this important statute.  A "congressional policy choice that includes nationwide service of process should be afforded substantial weight."  ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 627 (4th Cir. 1997). Accordingly, the federal interest in pursuing throughout the United States claims of fraud against the government outweighs the distance inconvenience presented by Plaintiffs' choice of forum.

*Service of Process*

It appears to be undisputed that Plaintiffs served Defendants by United States express mail, return receipt requested, and that this mail was delivered on July 8, 2005, at the Defendants' place of business.  Defendants argue that Plaintiffs have failed to effect proper service of process since the manner in which they served Defendants did not comply with the applicable provisions of Rule 4 of the Federal Rules of Civil Procedure.

Where a waiver of service of process has not been obtained from an individual or a corporation, as it has not in this case, Fed.R.Civ.P. 4(e)[12] provides that "[u]nless otherwise provided by federal law," service upon an individual shall be in the manner prescribed (1) by the law of the state in which the

---

[12]   Rule 4(e) provides as follows:

**(e)   Service Upon Individuals Within a Judicial District of the United States.**  Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:

(1)   pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or

(2)   by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

district court is located, (2) by the law of the state in which
service is effected, (3) by delivering a copy of the summons and
complaint to the individual personally or by leaving a copy at
his dwelling with someone of suitable age and discretion, or (4)
by delivering a copy to his authorized agent.  As pertinent here,
Fed.R.Civ.P. 4(h)[13] provides that "[u]nless otherwise provided by
federal law," service upon a corporation shall be made in the
manner prescribed (1) by the law of the state in which the
district court is located, (2) by the law of the state in which
service is effected or (3) by delivering a copy of the summons
and complaint to an officer or managing agent or person
authorized by law to receive service of process.

---

[13]     Rule 4(h) provides as follows:

   **(h)   Service Upon Corporations and Associations.**   Unless
   otherwise provided by federal law, service upon a domestic
   or foreign corporation or upon a partnership or other
   unincorporated association that is subject to suit under a
   common name, and from which a waiver of service has not been
   obtained and filed, shall be effected:

        (1)   in a judicial district of the United States in
   the manner prescribed for individuals by subdivision (e)(1),
   or by delivering a copy of the summons and of the complaint
   to an officer, a managing or general agent, or to any other
   agent authorized by appointment or by law to receive service
   of process and, if the agent is one authorized by statute to
   receive service and the statute so requires, by also mailing
   a copy to the defendant, or

   (2)   in a place not within any judicial district of the United
   States in any manner prescribed for individuals by subdivision
   (f) except personal delivery as provided in paragraph (2)(C)(i)
   thereof.

Although not entirely clear, Plaintiffs seem to argue that since the FCA provides for nationwide service of process, the methods of service set forth in Rule 4 are not applicable here.  We disagree.  The "[u]nless otherwise provided by federal law" language of Rule 4(e) and 4(h) "explicitly provides that a federal statute's service of process provision should operate as an alternative to" the methods set forth the subdivisions (e) and (h).  Wright & Miller, Federal Practice and Procedures: Civil 3d, § 1117 (2002).  "However, in the event the applicable federal statute does not set forth the method for serving process, service should be made under the appropriate subdivision of Rule 4."  Id.  Here, Section 3732(a) of the FCA provides for extra-territorial or nationwide service of process but does not provide the method for service.  Accordingly, Rule 4 applies.  Id.; see also, Toledo v. Ayerst-Wyeth Pharmaceutical, Inc., 852 F.Supp. 91, 102 (D.P.R. 1993).

The question this Court must address then is whether the express mail service utilized by Plaintiffs comports with Pennsylvania law, i.e., "the law of the state in which the district court is located."  Fed.R.Civ.P. 4(e)(1) and (h)(1).[14]

---

[14]  Although not discussed by the parties, it appears that the express mail service does not comport with California law, i.e., "the law of the state in which service is effected," Fed.R.Civ.P. 4(e)(1), since California requires personal service of original process.  Cal.R.Civ.P. §§ 415.10 and 416.10.

Under Pennsylvania law, service outside the Commonwealth may be accomplished, *inter alia*, by any form of mail requiring a receipt signed by the defendant or his authorized agent.  Pa.R.Civ.P. 404[15] and 403.[16]  Although Plaintiffs secured signed receipts in

---

[15]     Rule 404 provides as follows:

**Rule 404. Service Outside the Commonwealth**

        Original process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint or the reissuance or the reinstatement thereof:

        Note: For reissuance and reinstatement of original process, see Rule 401(b).

    (1) by a competent adult in the manner provided by Rule 402(a);

        Note: See Rule 76 for the definition of "competent adult".

    (2) by mail in the manner provided by Rule 403;

        (3) in the manner provided by the law of the jurisdiction in which the service is made for service in an action in any of its courts of general jurisdiction;

        (4) in the manner provided by treaty; or

            Note: A treaty may provide that to effect service a plaintiff must satisfy requirements which are in addition to the procedures specified by this rule.

        (5) as directed by the foreign authority in response to a letter rogatory or request.

Pa.R.Civ.P. 404.

[16]     Rule 403 provides, in pertinent part, as follows:

**Rule 403. Service by Mail**

        If a rule of civil procedure authorizes original process to be served by mail, a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent. Service is complete upon delivery of the mail. * * *

        Pa.R.Civ.P. 403.

this case, <u>see</u> docket entries 30 and 31, Plaintiffs have not established that the individual who signed the receipts is Dr. Diesfeld or his authorized agent or the authorized agent for PWDPC.  Accordingly, it appears that Plaintiffs did not effect proper service under Pennsylvania law.[17]  This does not end our inquiry, however.

If Plaintiffs demonstrate good cause for their failure to effect proper service within the prescribed 120 days set forth in Rule 4(m), the district court must allow Plaintiffs additional time to effect service.  Fed.R.Civ.P. 4(m); <u>Petrucelli v. Bohringer and Ratzinger, GMBH</u>, 46 F.3d 1298, 1305 (3d Cir. 1995).  If, however, good cause does not exist, the district court may, in its discretion, dismiss the case without prejudice or extend the time for service.  <u>Id.</u>

Here Plaintiffs offer no explanation why they did not properly serve Defendants.  Thus, the court has no basis upon

---

[17]    As the Defendants point out, there is some question about whether Rule 404 governs service of corporations outside the Commonwealth or whether Rule 424, which provides for personal service of original process on a corporation or similar entity, controls.  <u>Compare</u> <u>Light and Sound Specialties, Inc. v. Vue-More Mfg. Co.</u>, 1990 WL 50568 (E.D.Pa. Apr. 19, 1990)(Pennsylvania law does not permit original process to be served on an out of state corporation by mail) with <u>Reichert v. TRW, Inc. Cutting Tools Div.</u>, 385 Pa.Super. 416, 561 A.2d 745 (Pa. Super. 1989) (Pennsylvania law authorizes service of process on out of state corporation by certified mail), <u>rev'd on other grounds</u>, 531 Pa. 193, 611 A.2d 1191 (Pa. 1992).  In any event, it appears that under either Rule service was not perfected in this case.

which to conclude that good cause exists to excuse Plaintiffs'
failure.

Plaintiffs ask this court to exercise its discretion
and relieve them of the consequences of Rule 4(m) in the absence
of good cause shown.  Defendants do not dispute that they
received notice of the lawsuit, albeit imperfect notice.  Indeed,
thirty-four days after the express mail was delivered to the
Defendants' place of business their counsel filed a stipulation
for an extension of time to answer or otherwise plead in response
to the complaint.  Doc. 16.  "Rule 4 is a flexible rule that
should be liberally construed so long as a party receives
sufficient notice of the complaint."  United Food & Commercial
Workers Union v. Alpha Beta Co., 736 F.2d 1371, 1382 (9th Cir.
1984)(citations omitted).  Defendants have not indicated or
argued that they will be prejudiced should the court grant
Plaintiffs additional time to effectuate proper service.
"Moreover, actual notice to a defendant that an action was filed
militates against a finding of prejudice."  Boley v. Kaymark, 123
F.3d 756, 759 (3d. Cir. 1997)(citing cases); see also, U.s. v.
Nuttall, 122 F.R.D. 163, 167 (D.Del. 1988)(actual notice of the
lawsuit precludes any finding of prejudice to defendant
"notwithstanding that service of process did not comport with
every detail of Fed.R.Civ.P. 4").  Accordingly, it is suggested
that the district court should exercise its discretion and not

18

dismiss the action for Plaintiffs' failure to effect proper service but, rather, should grant Plaintiffs a limited time to effect proper service.

For the above-stated reasons, the district court should deny the defendants' Motion to Dismiss Complaint (doc. 23).

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.


Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge


Dated:   7 March, 2006.


cc:  Hon. David S. Cercone
     United States District Judge

     Andrew M. Stone, Esquire
     Stone & Stone
     437 Grant Street
     828 Frick Building
     Pittsburgh, PA 15219

     Robert L. Eberhardt
     Assistant United States Attorney

19

Suite 700 U.S. Post Office & Courthouse
Pittsburgh, PA 15219

Greg Pearson, Esquire
United States Department of Justice
Civil Division
Ben Franklin Station
P.O. Box 261
Washington, D.C. 20044

Neal R. Devlin, Esquire
Richard A. Lanzillo, Esquire
Knox, McLaughlin, Gornall & Sennett
120 West Tenth Street
Erie, PA 16501

Arthur H. Stroyd, Jr., Esquire
Reed Smith LLP
435 Sixth Avenue
Pittsburgh, PA 15219