IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,           )
ex rel. MARC A. LANDSBERG, M.D.,    )
and SHARON L. BURKE,                )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )  Civil Action No. 03-1429
                                    )
PETER G. LEVINSON, M.D.,            )
LAKE ERIE WOMEN'S CENTER, P.C.,     )
PATRICK WILLIAM DIESFELD,M.D.,P.C., )
3 DIMENSIONAL IMAGING, INC.,        )
SERHAT ERZURUM, M.D.,               )
GEORGE H. DENEHY, and DOES I        )
through XX, inclusive,              )
                                    )
            Defendants.             )

OPINION

Hay, Magistrate Judge

Marc A. Landsberg, M.D., and Sharon L. Burke, hereinafter collectively referred to as the "Relators," commenced this *qui tam* action pursuant to the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3732, as amended.[1] The Relators allege that the defendants perpetrated a scheme to defraud the United States of America, billing Medicare and Medicaid for

---

[1] According to the complaint, Serhat Erzurum, M.D. ("Erzurum"), hired Dr. Landsberg in October of 2001, to work as a physician in the specialty of obstetrics/gynecology at Erzurum's medical office in New Castle, PA. Complaint, ¶ 15. Dr. Landsberg's employment with Erzurum and his professional corporations lasted through July 28, 2003. Id. Erzurum hired Ms. Burke in April of 2001 and most recently she performed billing services for Erzurum's various business enterprises. Complaint, ¶ 14.

unnecessary medical tests and procedures.[2] Specifically, the Complaint charges that defendant Serhat Erzurum, M.D. ("Erzurum"), conspired with others and devised the scheme to defraud the government.[3] The Relators claim that defendants Dr. Levinson ("Levinson") and Lake Erie Women's Center, P.C. ("LEWC") entered into agreements with Erzurum's company, 3 Dimensional Imaging, Inc. ("3DI"), to implement fraudulent billing protocols and to pay 3DI commissions of 25% to 40% of the increased revenues generated.[4] Further, it is alleged that Levinson, applying the techniques and lessons learned from Erzurum, (1) instructed his ultrasound technicians to perform ultrasound tests, frequently without regard to medical necessity, in order to maximize revenues;[5] (2) designated obstetric patients as "high risk" when they were not, for purposes of justifying tests that were not necessary;[6] (3) instructed his employees and billing company to bill multiple codes for each test performed, thus billing the government several times for a single test;[7] (4) instructed his employees to schedule patients for multiple repeat

---

[2] Complaint, p.1.

[3] Complaint, ¶ 36.

[4] Complaint, ¶¶ 37, 38 & 50.

[5] Complaint, ¶ 39.

[6] Complaint, ¶ 40.

[7] Complaint, ¶ 41.

2

tests far in excess of what could be medically necessary or justified;[8] and (5) instructed his employees to mis-code ultrasound tests under a code for CAT scan tests.[9]

Levinson and LEWC subsequently filed a motion to dismiss or, in the alternative, a motion for a more definite statement, arguing that the complaint is devoid of specific allegations of fraud as required by Rule 9(b) of the Federal Rules of Civil Procedure.[10] See [Dkt. 11]. Specifically, defendants argued that the Relators had not identified a single false claim, the date of any such claim or the contents of any such claim nor had they identified a single instance when Dr. Levinson or any LEWC practitioner performed a medically unnecessary test or billed the United States for any unnecessary or unperformed procedure.

Finding that the Third Circuit Court of Appeals has rejected a strict application of Rule 9(b), requiring only that plaintiffs plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and that the

---

[8] Complaint, ¶ 42.

[9] Complaint, ¶ 43.

[10] Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

3

Relators had sufficiently identified the scheme of fraudulent behavior in which the defendants allegedly engaged, the Court denied defendants' motion. See [Dkts. 44, 50]. Citing to United States of America v. Kensington Hospital, 760 F. Supp. 2d 1120, 1125 (E.D. Pa. 1991), the Court also noted that full particulars will have to be revealed during discovery. [Dkt. 44, p.8].

Now, in the throws of discovery, Levinson and LEWC have filed another motion to dismiss, this time pursuant to Fed. R. Civ. P. 12(b)(1), arguing that subject matter jurisdiction in a *qui tam* action is dependent on the plaintiff-relators having actual and direct knowledge that the defendants submitted at least one false claim to the government.[11] Because the Relators in this case testified at their deposition that they have no independent knowledge that defendants submitted a false claim to the government, defendants conclude that the Court is without jurisdiction.[12]

---

[11] Also before the Court is a motion to dismiss filed by defendants Patrick William Diesfeld, M.D. and Patrick William Diesfeld, M.D., P.C. ("the Diesfeld defendants"). Because the Diesfeld defendants have raised the same arguments as Levinson and LEWC regarding the Court's jurisdiction under the FCA, the following discussion applies to their motion as well.

[12] Because defendants have challenged the Relators' ability to comport with a jurisdictional prerequisite and, thus, have presented a factual challenge to the Court's jurisdiction, the Court is not required to attach any presumptive truthfulness to the allegations in the complaint but may consider evidence outside the pleadings. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007), citing Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). As such, the Court has considered the documents submitted by defendants in support of their motion.

Defendants' argument is premised on § 3730(e)(4)(A) of the FCA, which provides that:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or actions in a criminal, civil or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action in an original source of the information.

31 U.S.C. § 3730(e)(4)(A). The FCA goes on to define "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided that information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). Because the Relators in this case do not have direct and independent knowledge of the information upon which their claims are based and, thus, are not "original sources," defendants contend that jurisdiction is lacking under § 3730(e)(4).[13] We disagree.

---

[13] Indeed, it appears that Relator Burke testified that she has never had any personal contact with either Levinson or anyone at LEWC, that she has never reviewed any records generated by LEWC, that she has no knowledge regarding the actual billing practices of Levinson or LEWC and has never seen a claim submitted by either of these defendants to a government entity, and has no knowledge of anything false or fraudulent about anything submitted to the government on behalf of Levinson or LEWC. Burke Depo., pp. 35-37, 43-45, 47-48, 146 [Dkt. 89-2]. As well, Burke testified that she was unable to identify any specific false claims submitted by Dr. Diesfeld or anyone in his practice group, that she could not identify any patients that they falsely identified as high risk or recount any instances of them

As the Court of Appeals for the Third Circuit has explained,

> The jurisdictional requirements of the FCA involve assessing whether the allegations and transactions constituting the bases of the claims were publicly disclosed and whether, *if they were*, the relator is an original source -- meaning that he has direct and independent knowledge of the information.

Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 515 (3d Cir. 2007) ("Atkinson") (emphasis supplied). Thus, for the jurisdictional bar to apply, the complaint must be based on material that was *publicly disclosed* in the first instance. Id. at 513. Section 3730(e)(4)(B) merely creates an exception to the public disclosure bar where the realtor is nevertheless an "original source" of the information. Id. As such, the question of whether the relator is an original source is only reached if it has already been determined that the relator's claims are based upon allegations that were publicly disclosed. Id. at 519 ("To determine whether a plaintiff is barred by the FCA's public

---

instructing employees to bill multiple CPT codes and that she never saw a single false claim on a CMS 1500 form submitted by Dr. Diesfeld. Id. at pp. 102-112, 133, 138. Similarly, Relator Landsberg testified that he had no knowledge of the specific billing practices of LEWC or Dr. Levinson, that he had no specific knowledge regarding when or what ultrasounds were ordered, and that he had no personal knowledge of any claim, false or otherwise, that was submitted to a government program by Levinson or LEWC, nor any knowledge that Levinson or LEWC ever falsely designated a patient as high risk. Landsberg Depo., pp. 54-55, 86-88 [Dkt. 89-3]. With respect to the Diesfeld defendants, Landsberg also testified that he could not identify any specific false claims submitted by them and had no independent knowledge that they performed duplicative tests on patients, billed multiple CPT codes or submitted false claims on CMS 1500 forms. Id. at pp. 86-93.

disclosure provisions, we must first assess whether the relator's claim is based on publicly disclosed allegations or transactions"). See U.S. ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 728 (1st Cir. 2007) (Finding that because there had been no public disclosure the court need not address whether the relator falls within the original source exception); U.S. v. Bank of Farmington, 166 F.3d 853, 859 (7th Cir. 1999) ("Whether the plaintiff is an original source is immaterial unless there has been such public disclosure"); U.S. ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d 699, 703 (8th Cir. 1995) ("A court reaches the original source question only if it finds the plaintiff's suit is based on information that has already been publicly disclosed"); Wang v. FMC Corp., 975 F.2d 1412, 1416 (9th Cir. 1992) ("Where there has been no 'public disclosure' within the meaning of section 3730(e)(4)(A), there is no need for a *qui tam* plaintiff to show that he is the 'original source' of the information").

The instant defendants, however, have not argued or pointed to any evidence to support a finding that the Relators' claims are based on information that was publicly disclosed before the instant complaint was filed. Indeed, although Levinson and LEWC filed a reply brief in this matter, they have not addressed the Realtors' argument in this regard or otherwise disputed the Realtors' argument that public disclosure is the

7

lynch-pin to § 3730(e)(4)'s jurisdictional bar. See U.S. ex rel. Doe v. John Doe Corp., 960 F.2d 318, 322 (2d Cir. 1992) ("Public disclosure of the allegations upon which the *qui tam* complaint rests is the bedrock of § 3730(e)(4)(A)'s jurisdictional bar").[14] Thus, public disclosure does not appear to be at issue here and the Court need not reach the question of whether the Relators are the "original source" of the information upon which their claims are based.[15]

Indeed, as pointed out by the Relators, defendants have not pointed to one case in which a court has found jurisdiction lacking because the relator was not an original source without

---

[14] Without any discussion of the FCA or the cases interpreting the statute, the Diesfeld defendants refute the Relators' public disclosure argument merely by stating that it "defies logic" since there can never be public disclosure of something that never occurred, i.e., a violation of the FCA. Diesfeld defendants' Reply Brief, p. 4 [Dkt. 96]. Of course, if that is the case, those facts will be born out in discovery and entitle the Diesfeld defendants to summary judgment. It does not entitle them to invoke the exception to a jurisdictional bar that has no application to this case.

[15] Because the original source exception is not at issue in this case, we have not addressed the Diesfeld defendants' alternative argument that the Relators fail to qualify as such because they did not provide the government with the information underlying the complaint in a timely fashion. We note, however, that defendants have not only not cited to any cases in which untimeliness provided the basis for dismissing a qui tam action, but the cases that they have cited merely suggest, in dicta, that the intent of the FCA is to encourage private individuals with information of fraud to come forward as soon as possible. Moreover, they did so after having already found that the information at issue in their respective cases was publicly disclosed and that the relators were not the original sources of that information. See U.S. v. Bank of Farmington, 166 F.3d 853, 866 (7th Cir. 1999); U.S. ex rel. Jones v. Horizon Healthcare Corp., 160 F.3d 326, 335 (6th Cir. 1998); U.S. ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d at 704.

8

first finding that there had been public disclosure. See Rockwell International Corp. v. United States, ___ U.S. ___, ___, 127 S. Ct. 1397, 1405, rehearing denied, ___ U.S. ___, 127 S. Ct. 2300 (2007)("As this case comes to the Court, it is conceded that the claims on which [the relator] prevailed were based upon publicly disclosed allegations within the meaning of § 3730(e)(4)(A)"); Atkinson, 473 F.3d at 531 (Concluding that "[a]ll of the allegations and transactions involved in each of the counts were publicly disclosed under § 3830(e)(4)(A)"); U.S. ex rel. Barth v. Ridgedale Elec., Inc., 44 F.3d at 703 ("Because public disclosure has been conceded on appeal in the present case, our analysis turns on whether Barth or the Union is an "original source" under the Act").

Defendants' reliance on U.S. ex rel. Feingold v. Palmetto Government Benefits Administrators, 477 F. Supp. 2d 1187 (S.D. Fla. 2007), aff'd, 2008 WL 2097615 (11th Cir. 2008) ("Feingold"), is also misplaced as even a cursory review of that case demonstrates that the Court declined to address whether the FCA's jurisdictional bar applied, finding the argument "was more properly addressed in a motion for summary judgment due to numerous issues of fact raised by the pleadings." Id. at 1191. Instead, the Court's decision to dismiss the case rested on its finding that the relator had failed to plead fraud with the requisite specificity under Rule 9(b). In so finding, the Court

9

relied on cases emanating from the Court of Appeals for the Eleventh Circuit which, unlike the Third Circuit, employs a strict interpretation of Rule 9(b).  Id. at 1193-1196.

Here, however, the issue is not whether the Relators have pled fraud with the requisite specificity under Rule 9(b). Indeed, this Court has already addressed and rejected defendants' argument that the Relators failed to comply with Rule 9(b) as that rule is applied by the Court of Appeals for the Third Circuit, and, in so doing, expressly rejected the Eleventh Circuits' strict application of the Rule.[16]  See [Dkts. 44, 50]. Rather, the issue here is whether the public disclosure bar to jurisdiction under § 3730(e)(4) applies, which the Court in Feingold declined to address.

In this manner, defendants' assertion that the Feingold Court relied on the Third Circuit's holding in Atkinson, does not accurately portray the Court's findings.  While the Feingold Court cited to Atkinson -- in a footnote -- as support for the proposition that the FCA is designed to prohibit lawsuits by relators who have had past financial success bringing claims under the FCA and who seek to repeat that success by filing

---

[16] In fact, in addressing defendants' previous motion to dismiss, this Court expressly declined to follow the Eleventh Circuit's decision in U.S. ex rel. Clausen v. Laboratory Corp. of America, Inc., 290 F.3d 1301 (11th Cir. 2002), upon which the Feingold Court relied, because it was contrary to the Third Circuit's approach to Rule 9(b). See [Dkt. 44: Report and Recommendation, pp. 6-7; Dkt. 50: Order adopting Report and Recommendation as Opinion of the Court].  See also Feingold, 477 F. Supp. 2d at 1194-1197.

10

claims based on the mere supposition that other entities are engaged in the same fraudulent activities, it did so in dicta in an effort to bolster its Rule 9(b) analysis. Feingold 477 F. Supp. 2d at 1196-97 n.10. At no time did the Court engage in any discussion of Atkinson, § 3730(e)(4) or public disclosure. Moreover, the mere fact that courts have found that the FCA is designed to prohibit "parasitic" lawsuits does not negate the fact that there has been no public disclosure in this case and that § 3730(e)(4)(A)'s jurisdictional bar is inapplicable.

Further, unlike in Feingold, there is no evidence that the instant Realtors have filed this action in order to repeat past financial successes. Their claims against Erzurum, who no one appears to dispute engaged in the fraudulent schemes at issue, are all part of this same suit. As well, the Relators' report to the government was based not only on their personal knowledge of Erzurum's fraudulent practices but their knowledge that LEWC entered into a contract with 3DI, that 3DI promoted the fraudulent practices at seminars with LEWC, and that 3DI subsequently received monthly compensation from LEWC based upon an increase in revenue -- revenue which the fraudulent practices were designed to generate. See Burke Depo., pp. 43-46, 48-53.[17]

---

[17] See also Burke Depo., pp. 102, 103, 106, 107, 111, 133, 143-45, regarding the Diesfeld defendants.

As such, the facts of this case appear to go beyond the "mere supposition" that the Feingold Court found wanting.

Having found that the FCA's public disclosure bar does not apply in this case, we need not address defendants' argument that the Relators are unable to cure the jurisdictional defect through discovery since there is no defect to cure. We note, however, that defendants' assertion that under Third Circuit law any discovery conducted in this case would necessarily constitute public disclosure barring jurisdiction under § 3730(e)(4) because the Relators are not an original source, is misplaced. As argued by the Relators, the cases upon which defendants rely merely hold that information revealed in discovery in a *prior* suit constituted a public disclosure in a subsequent *qui tam* action, and not that evidence revealed during the discovery phase of a *qui tam* action was barred from use in that suit under § 3730(e)(4)(A). See U.S. ex rel. Mistick PBT v. Housing Authority of the City of Pittsburgh, 186 F.3d 376, 385 (3d Cir. 1999), cert. denied, 529 U.S. 1018 (2000) (Finding that because the facts had been disclosed during discovery in a previously filed state court action they were publicly disclosed under § 3730(e)(4) for purposes of the *qui tam* action presently before the court); U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Insurance Co., 944 F.2d 1149, 1151-52, 1157-60 (3d Cir. 1991) (Finding that the information upon which the

12

relator's *qui tam* action was based was publicly disclosed as it had been obtained during discovery in a previously filed lawsuit). See also Wang v. FMC Corp., 975 F.2d at 1416, citing LeBlanc v. Raytheon Co., 913 F.2d 17, 20 (1st Cir. 1990), cert. denied, 499 U.S. 921 (1991) ("Evidence publicly disclosed for the first time during the discovery phase of a *qui tam* suit is not barred from use in that same suit by section 3730(e)(4)(A)").

For these reasons, IT IS HEREBY ORDERED that the motion to dismiss filed on behalf of defendants Levinson and LEWC [Dkt. 89], and the motion to dismiss filed on behalf of the Diesfeld defendants [Dkt. 92], are DENIED

/ s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 29 May, 2008.

cc: All counsel of record by Notice of Electronic Filing